Judge Underwood
delivered the opinion of the Court.
On the 10th of February, 1788, Samuel Woods, sen. and Goodrich Crump, entered into a contract, from which it appears that Woods had, *12 before that time, received of Crump land warrants for 10,000 acres, to be located. Crump was to have 6,000 acres, first choice, and Woods, for his services,, was to have the residue. Woods stipulated to have the whole surveyed by the last day of the ensuing. November, and Crump agreed to pay the expenses. On the back of this contract, is the following assignment: “[. do hereby assign my right and title- of the within article of agreement to-Samuel Woods, junr. for value received of him, as witness my hand this-the 9th-of November, 1791. Sami,. Woods.”'
Test, Sami. M’Ke.e,

James M'Dawdl."

On the 9th of November, 1791', Sami. Woods, sr. conveyed to his son, Sami. Woods, j-r. in consideration of natural affection and five shillings in hand paid, according to the recitals of the deed, his settlement and preemption of 1,400 acres on Shawaney Run, 3,764 acres on the-waters of Benson, and ‘^OOOf acres, part of 10,000 acres, in the three forks of Kentucky, in the name of Goodrich Crump,” besides a- negro woman and a considerable quantity of personal property.
In 1803, S. Woods, jr< died, so much in debt that it took all, or nearly all his property, reafand personal, to pay his debts.
On the 9th of November, 1791, in consideration of the deed executed by S. Woods, sr. to his son, the latter covenanted with the former, to support him and his wife during life, by furnishing 100 acres of land, tax free, a negro woman, &c. &c. for the use of the old people. After the death of S. Woods, jr. his /ather sued Jacob Frounan, the son’s administrator, for a breach of the covenant, the jury assessed £142 damages, and the court directed the administrator to retain that sum out of the assets, and pay $4Q annually to the complainant, S. Woods, sr. The decree was rendered in 1805. In 1823, S. Woods, sc. executed a receipt to Harvey Woods and Geo. Bo-hon, son and son-in-law of S. Woods, jr. for the full amount of a judgment obtained against the administrator of Sami. Woods deceased, in the Mercer circuit court, for his maintenance, and acknowledged *13 lull satisfaction for all demands against1, the heirs of his son Samuel,in consequence of his agreeing to support him.
On the 6th of March, 1812, S. Woods, sr. and Charles Brown, the plaintiff m error, entered into a written agreement, by which Woods-stipulated give to Brown one half of four thousand acres of land, that said Woods obtained for locating ten thous- and acres of land for Goodrich Crump, and Brown agreed on his part, to survey all the land that the said Woods entered for said Crump, to-wit: all that had not been surveyed, if to be found, and to pay for surveying and all reasonable charges. Under this agreement Brown caused four surveys to be made, of 500 acres each, in virtue of entries made in 1782, three of- them on the south fork of Rockcastle and the other in Knox county, on Big Raccoon creek, and procured patents therefor, in the name of the heirs of Goodrich Crump, bearing date in October, 1813. In April 1819, S. Woods, sr. sold the residue of his interest in the land he was entitled to under the contract with Crump, and executed an instrument of writing evidencing the salp, and which also stipulated that Brown was to have no recourse in case he did not succeed in getting the title from Crump’s heirs.
In 1820, Brown filed his bill against Sami. Woods, sr. and the unknown heirs of Goodrich Crump, alleging that Crump had obtained his 6,000 acres, and that he was entitled to the 2,000 acres for which he had caused patents to issue as aforesaid, arid concluded with a prayer for a conveyance of the title.
Pending this suit, and after an interlocutory decree-had been rendered, the heirs of Sami. Woods, jr. came forward and filed their bill against Sami. Woods, sr. and said Brown, and also against the unknown heirs of Goodrich Crump, praying that Brown may be restrained from perfecting the interlocutory decree in his behalf, and that the heirs of Crump may be compelled to convey to them, in consequence of the assignment of the agreement between S. Woods, sr, and Crump, made to their aneestorin 1791. Both suits were heard and decided at the same time. Upon the bill filed by the heirs of S. Woods, jr. the court decreed that Crump’s heirs should convey them *14 (he ¡flnd, and upon tbe bill filed by Brown, the inter l°cuiory decree in his behalf was set aside .and his bill dismissed. To reach these decrees writs of error have been prosecuted.
prooeoiini's ag.iinpt ab- • nts^amfon known heirs', upon con structive no-lic-tiion. njus't he strictly ob-serven.
If the hill allege, that the hemfarn unknown .to the complainant, fo'thafuíT strict cotupli-anee with the r^uiresan'aP fiOavit that'1 the heirs are be'filetTaion' with the bill?
Wo shall consider, first, the proceedings and decree in behalf of the heirs of Sami. Woods, jr. It is assigned for error, that the order of publication against Crump’s heirs is defective, and did not justify faking the bill for confessed against them. According to nu-morous adjudications, the rule is fully established, that l*lf; ac^s °f Assembly tolerating proceedings against absent defendants and unknown heirs, upon construc-f¡ve notjce by publication, must be strictly observed. This case of Lawlins, &c. vs. Lackey, VI Monroe, 70, gives the reason of (he rule. The act of Assembly of 1815, Í Dig.11, requires the complainant, “before the ernanarion of any process, or making any order against unknown heirs, to file in the clerk’s tffice, with his or her bill, au affidavit, stating that he or she does not know the names of such heirs.”
In this ca'se there was no separate affidavit, distinct from the bill filed, bul the bill charged that the names Crump’s heirs were unknown to the complainants, and there is an affidavit filed, showing that the bill was sworn to by two of the complainants. This we regar(J as a strict compliance with the intent and meaning of the act of Assembly, if swearing to the. bill by a part of the complainants is sufficient. Whether an affidavit, made by part of the complain-ar)ts, should be regarded as' sufficient, we shall not stop to enquire, but leave the statute in that respect, ^ora ProPer interpretation when a case occurs where a decision on that point is indispensably necessary. The order of publication was made at the Octobei’ term, 1823. The editors of the Olive Branch certify that it was inserted nine successive weeks In their paper; Their certificate bears date the 3d of April, 1824. Regarding the term in April as the term next ensuing that in October, we think the certificate of the editors shows that the law’ has been complied with. The nine insertions must have been after the order was made, and before the date of the certificate. Orders of publication against unknown heirs, need not be'pubiished more than eight weeks; Barely vs. *15 Hendricks, IV Monroe, 252. A certificate of the publication by an editor instead of the printer, seems to have been regarded as sufficient by the court, in the case of Blight’s heirs vs. Banks, &c. VI Monroe, 224. Tber-. is a distinction between the editor and printer of a paper; but it often happens they are the same person, and it is more properly the duty of the editor to know what the paper contains, than of the printer who attends o: ly to the mechanical part of the business. We shall, therefore, waiving the question relating to the sufficiency of the affidavit by a part of the complainants, consider the heirs of Crump properly before the court, and inquire into the merits of the claim relied on by the heirs of. S, Woods, jr. The contract with Crump and the assignment thereon, were found in the hands of Brown. He denies that: there ever was any delivery of the assignment, or of Crump’s obligation, to S. Woods jr. There is no proof of any delivery. The consideration for the assignment, was the agreement of S. "Woods jr.-to.sup-port his father and mother, for life. In this agreement he failed, and by misfortune or imprudence, in squandering the* estate received from his father, the old man was left without the means of coercing his representatives. To say the least, here is a failure of consideration torn considerable extent. The assignee, S. Woods jr. lived about twelve years after the assignment, and during that time it does not appear that he made the least effort to avail himself of the benefits resulting from it, by causing the unsurveyed entries in Crump’s name, to be surveyed and carried into grant. His administrator and heirs, after bis death, make no effort. More than twenty years after the assignment, Brown makes his'contract for an interest in the land, and by his exertions, and at his expense, procures, patents. About thirty years after the assignment and eighteen nfl< r the death of their father, the heirs of S. Woods jr. file their bill, claiming to stand in the shoes of the assignor, and asking a specific execution of the contract, by a conveyance from Crump’s heirs. If they are thus to be let in. itwould seem to be just that they should, at least, pay the expenses which Brown incurred in procuring the patents; for we cannot perceive that he was acting mala Jide. It was attempted to be shown that he had notice *16 of this assignment, because of the general notoriety of the transfer and conveyance of all the property owned by S. Woods, sr. to his son. Notice of this particular assignment ought not tobe presumed from such premises. The “three thousand acres, part of ten thousand acres,in the three forks of Kentucky, in the nam > of Goodrich Crump,” mentioned in the deed from S. Woods sr. to his son, cannot be regarded as the same land now in contest, as these lie on Rock-castle and Big Raccoon creek. There is no ground for inferring that Bro-vn knew any thing of the assignment in 1812 or Hll1}, when his contracts with S. Woods, sr. were made. He swears he did not. Under these Circumstances, if it was proper to decree the land to Woods’heirs, we think limy ought not to have been permitted tq profit by Brown’s labour and money.
Tho iutorpo-•'í'iud ui ihe (.nuticctlcr to * a oreo ooii-spfioifi-ondy, cimnlct !>»' n'i.¡ ] i(o't oy a KOoud discretion.
Bill against unknownhoirs the omission to file an affidavit, that the name» of the heirs are unknown to complainpnt, is a fatal error. If the complainant, in a bill against unknown h’rs omit to file an ■affidavit that the names of the heirs are urik own to him, his bill should be dis-mi‘«oda)itto!if prejudice.
*16 As they asked the aid of the chancellor, they should have been required to pay all reasonable charges, by which the land had been saved. But we do not concede that the heirs of Woods have shown themselves entitled to the relief they ask. The interposition of -the chancellor should be regulated by a sound discretion. He is not obliged to enforce contracts specifically, or to furnish extraordinary aid foñ their execution. Looking at the uncertainty whether there ever was a delivery, viewing the nature of the consideration for the assignment, and its failure to á great extent, the lapse of time, and the negligence of S. Wood?, jr. and his representatives, and contemplad ing the probable, if not certain loss of (be two thous- and acres of land in controversy, but for the exertions of’Brown, under his contract with S. Woods, sr. we think this is a case where the chancellor ought not to interfere. Woods’ heirs have obtained a receipt in full against the claim of their grand-father for sup® port.
In this transaction they seem to recognize the validity of the claim as against them. They did this without paying a dollar, pending the suit, and long after their grand father had induced Brown to spend time and money endeavoring to secure the land in consequence of their contract. We mention this as an additional reason why the heirs of Woods should *17 not be permitted, by occupying the place of their grand father, in respect to Crump, to get the land, and at the same time get clear of the charges incurred by Brown in securing the land, under the contract with the grand father. Upon the whole case, we are of opinion that the hill of the heirs of S. Woods,jr. should have been dismissed. The decree in their favor is, therefore, reversed, and the cause remanded, so that the bill may be dismissed.
Additional opinion,
In the case of Brown’s bill against Crump’s heirsi &c. the proper parties were not before the court. Brown omitted to file an affidavit that the names of the heirs of Crump were unknown to him. This isa fatal error. On that account his bill ought to have been dismissed without prejudice, and not absolutely. The decree in this case must, therefore, be reversed, and the cause remanded, with directions to dismiss the bill without prejudice. If Brown shall institute a new suit, the heirs of S. Woods, jr. now likewise the heirs of S. Woods, sr. will be proper parties, when, if it shall appear that there is any thing unreasonable in decreeing to him the title, it ought not to be done. But we cannot anticipate the merits of this suit, if there should be one.
Brown must recover his costs in this court.